FILED

**May 21, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-272 – *State of West Virginia v. Heath Allen Rose*

BUNN, Chief Justice, concurring:

I agree with the majority's conclusion that Petitioner Heath Allen Rose's convictions should be affirmed. However, I disagree with the majority's analysis that Mr. Rose waived his assignment of error regarding the Confrontation Clause. Mr. Rose appropriately preserved his objection to the introduction of Violet Telfer's statement based on the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Article III Section 14 of the West Virginia Constitution. While I disagree with the majority's analysis on this issue, Mr. Rose's convictions should nevertheless be affirmed because Ms. Telfer's non-testimonial statement does not implicate the Confrontation Clause.

In his third assignment of error, Mr. Rose contends that the circuit court erred by allowing the State to present a statement of witness, Ms. Telfer,[1] through Cpl. Fitch, a law enforcement officer, thus violating Mr. Rose's right to confront Ms. Telfer. The

---

[1] The State argued below, and the circuit court found, that Ms. Telfer was an "unavailable witness." Other than in passing, Mr. Rose does not raise any arguments on appeal as to this finding. *See State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." (quotations and citations omitted)); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

1

majority disposes of this issue by finding that Mr. Rose failed to appropriately preserve a Confrontation Clause objection before the circuit court. The majority explains that during the trial, "the circuit court and the parties vigorously discussed whether Ms. Telfer's statement was inadmissible hearsay" and during this discussion, Mr. Rose "noted, but only in passing, that admission of the statement would preclude him from cross-examining Ms. Telfer" pursuant to the Confrontation Clause. Maj. Op. at 13. Therefore, the majority concludes that Mr. Rose waived this assignment of error. I disagree.

As this Court has previously held, "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 10, *State v. Shrewsbury*, 213 W. Va. 327, 582 S.E.2d 774 (2003) (per curiam) (quoting Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996)). Here, prior to the circuit court's admission of Ms. Telfer's statement, Mr. Rose twice objected on Confrontation Clause grounds. First, after the State indicated that it intended to introduce Ms. Telfer's statement through Cpl. Fitch, Mr. Rose objected, among other reasons,[2] because "[Ms. Telfer's] not subject to cross examination and . . . confrontation." During the discussion between the court and counsel that followed, Mr. Rose again objected and specifically argued that the admission of this statement violated his rights because "it precludes [counsel] from cross examining her,

---

[2] While Mr. Rose objected to the admission of this statement based upon both hearsay and the Confrontation Clause, Mr. Rose has abandoned his hearsay objection on appeal. *See LaRock*, 196 W. Va. at, 302, 470 S.E.2d at 621.

under the [C]onfrontation [C]lause of the Constitution of the United States and the Constitution of the State of West Virginia." Thus, Mr. Rose preserved his objection based upon the Confrontation Clause because his specific objections alerted the circuit court, with "sufficient distinctiveness" "to the nature of the claimed defect." Syl. Pt. 10, in part, *Shrewsbury*, 213 W. Va. 327, 582 S.E.2d 774.[3]

Because Mr. Rose appropriately preserved his objection on Confrontation Clause grounds, it is my opinion that it was incumbent upon the Court to determine whether the admission of Ms. Telfer's statement, presented through Cpl. Fitch, violated his right to confront Ms. Telfer. In undertaking this necessary inquiry, I would have found that Mr. Rose's right to confrontation pursuant to the United States and West Virginia Constitutions was not violated. This Court has previously held that pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause "bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. Pt. 6, in part, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006) (citing Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution), *modified on other grounds by State v. Jako*, 245 W. Va. 625, 862 S.E.2d 474 (2021). Thus, the Confrontation Clause applies only when the

---

[3] Mr. Rose raised his Confrontation Clause objection a third time in his post-trial motion for a new trial.

statement at issue is testimonial in nature. *See State v. Thompson*, \_\_\_, W. Va. \_\_\_, \_\_\_, 927 S.E.2d 885, 895 (2026) ("In a *Crawford* challenge, we must initially determine whether the challenged evidence is testimonial.").

A testimonial statement is defined as "a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Syl. Pt. 8, in part, *Mechling*, 219 W. Va. 366, 633 S.E.2d 311. Furthermore,

> "To determine if a statement is testimonial, we must decide whether it has 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 669, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) (Sotomayor, J., concurring in part) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011))."

*Thompson*, \_\_\_ W. Va. at \_\_\_, 927 S.E.2d at 895. The Court explained that a witness's statement to law enforcement is testimonial (1) "when the circumstances objectively indicate that there is no ongoing emergency" and (2) "the primary purpose of the witness's statement is to establish or prove past events potentially relevant to later criminal prosecution." Syl. Pt. 9, in part, *Mechling*, 219 W. Va. 366, 633 S.E.2d 311. On the other hand, a witness's statement to law enforcement "is non-testimonial when made under circumstances objectively indicating that the primary purpose of the statement is to enable police assistance to meet an ongoing emergency." *Id.* When determining whether an out-of-court statement is testimonial, courts "should focus more upon the witness's statement, and less upon any interrogator's questions." Syl. Pt. 10, in part, *id.* Finally, the Court has

4

reiterated that "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Thompson*, ___ W. Va. at ___, 927 S.E.2d at 895 (second alteration in original) (quoting *Ohio v. Clark*, 576 U.S. 237, 245, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015)).

Applying these well-established standards to analyze Ms. Telfer's statement reveals that it was non-testimonial, and thus, the statement's admission did not violate Mr. Rose's Confrontation Clause rights. Here, Ms. Telfer made her statement during an ongoing emergency, and the primary purpose of her statement to Cpl. Fitch was to "assess the situation, the threat to [the officers'] safety, and possible danger to the potential victim and to the public[.]" *Michigan v. Bryant*, 562 U.S. 344, 376 (2011) (quotations and citation omitted). Cpl. Fitch testified that he arrived at the scene shortly after the victim had been shot and in assessing the situation he needed to attempt to "understand why this person is, in fact, deceased." He explained that the shooter had left the area and law enforcement could not locate the murder weapon. Moreover, Cpl. Fitch initially spoke with Ms. Telfer because "[s]he came up and volunteered the information" and they initially spoke shortly after he arrived at the scene, within approximately an hour after the shooting. Thus, given the obvious ongoing emergency at the scene of the shooting where the victim was deceased, no weapon had been recovered, and a suspect was on the run, the nature of Ms. Telfer's statement to Cpl. Fitch, who was assessing the situation, was non-testimonial and its admission did not violate Mr. Rose's constitutional rights.

5

This Court recently arrived at the same conclusion under similar facts. *See Thompson*, ___ W. Va. at ___, 927 S.E.2d at 895. In *Thompson*, this Court found that a witness's statement to law enforcement following a shooting was non-testimonial in nature when the declarant initiated the contact with law enforcement, there was no police interrogation, the declarant offered the statement in an informal environment, and there was an ongoing emergency.[4] *See id.* at ___, 927 S.E.2d at 895-96. Thus, while Mr. Rose preserved his objection pursuant to the Confrontation Clause, he is entitled to no relief because Ms. Telfer's statement was non-testimonial and does not implicate the Confrontation Clause.

For these reasons, I respectfully concur with the majority's opinion in this case.

---

[4] *C.f. State v. Surbaugh*, 230 W. Va. 212, 224, 737 S.E.2d 240, 252 (2012) (concluding that a victim's statements following a shooting were non-testimonial when there was an ongoing medical emergency and "law enforcement had a present need to know what happened from [the victim's] point of view, so as to aid their investigation of the shooting and how [the victim] was injured"). *See also Phillips v. State*, 415 So. 3d 583, 594 (Miss. 2025) ("While [the witness] was not physically injured . . . both officers testified to his distraught, frantic state. This, in conjunction with the fact that [the defendant] had fled the scene with a weapon, is sufficient to find that the primary purpose of his statements made to officers was to assess the situation and to address the ongoing emergency.").